## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANNAI ALPHEAUS,<br><br>        Plaintiff,<br><br>   v.<br><br>CAMDEN COUNTY CORRECTIONAL FACILITY, CAMDEN COUNTY BOARD OF FREEHOLDERS, CAMDEN COUNTY BOARD OF FREEHOLDERS DEPUTY DIRECTOR EDWARD T. MCDONNELL, SCOT N. MCCRAY, IAN K. LEONARD, JEFFREY NASH, CARMEN G. RODRIGUEZ, JOHNATHAN L. YOUNG, SR., MICHELLE A. GENTER-MAYER, SUSAN SHIN ANGULO, CAMDEN COUNTY BOARD OF FREEHOLDERS DIRECTOR LOUIS CAPPELLI, JR., WILLIAM F. MOEN, THOMAS MCNULTY, DONNA WEBSTER, EARL O'CONNOR, SUANNY RIVERA, TIMOTHY SINGLETON, JACKIE WESCOLL, JOHN VILLEGAS, MURIEL MITCHELL-DAVIS, PHILLIP RITZ, JOHN FURTADO, TIFFANY DEANGELIS, THERON SHARPER-COOPER, JOSUE ORTOLA, REBECCA FRANCESCHINI, WAYNE NORTON, JAMES BONNER, CAMDEN COUNTY CORRECTIONAL FACILITY CORRECTIONAL OFFICER M. MARTINEZ, CHRISTOPHER FOSCHINI, JOHN S. STINSMAN, TAKIA JOHNSON, MICHCAL JACOB, THOMAS CROSMICK, CHRIS KELLY, JAMES FINLEY, KEVIN CROSSAN, ALBERT DANIELS, DANIEL PURDY, LANCE MCARTHY, JANET GIORDANO, MICHAEL DOYLE, WARDEN OF CAMDEN COUNTY CORRECTIONAL FACILITY, DIRECTOR DAVID S. OWENS, SR., WARDEN KARDEN TAYLOR, and LAWRENCE TAYLOR,<br><br>        Defendants. | May 31, 2017EROME B. SIMANDLE<br><br>  s/ Jerome B. Simandle<br>  No. 17-cv-0180(JBS-AMD)<br><br><br>      **OPINION** |

APPEARANCES:
Jannai Alpheaus, Plaintiff Pro Se
2642 Baird Boulevard, Apt. 3
Camden, NJ 08105

**SIMANDLE, Chief District Judge:**

## I. <u>INTRODUCTION</u>

1.    Plaintiff Jannai Alpheaus seeks to bring a civil rights Complaint pursuant to 42 U.S.C. § 1983 against the following defendants for allegedly unconstitutional conditions of confinement (Complaint, Docket Entry 1):

> a. The Camden County Correctional Facility ("CCCF") (Complaint, Docket Entry 1, at § I(B));
>
> b. The Camden County Board of Freeholders ("the BOF") (Complaint, Docket Entry 1, at § I(B));
>
> c. Ten individual members of the BOF "from 2014 – Present" (Complaint Exhibit 1, Docket Entry 1, Attachment 1 at 1): "Deputy Director Edward T. McDonnell, Scot N. McCray, Ian K. Leonard (2014), Jeffrey Nash (2014), Carmen G. Rodriguez (2014-2016), Johnathan L. Young, Sr., Michelle A. Genter-Mayer (Surrogate/Former Freeholder (2014)), Susan Shin Angulo (2016-2018), Director Louis Cappelli, Jr. (2015-2017) and William F. Moen (2016-2015) [*sic*]" (*id.*) (the foregoing ten individual defendants

hereinafter collectively referred to as "BOF Members"); and

d. Thirty-five CCCF correctional personnel (Complaint Exhibit 1, Docket Entry 1, Attachment 1 at 2 – 3): "C/O Thomas McNulty, C/O Donna Webster, C/O Earl O'Connor (Lt.), C/O Suanny Rivera, C/O Timothy Singleton, C/O Jackie Wescoll, C/O John Villegas, C/O Muriel Mitchell-Davis, C/O Phillip Ritz, C/O John Furtado, C/O Tiffany Deangelis, C/O Theron Sharper-Cooper, Lt. Josue Ortola, Lt. Rebecca Franceschini, Sgt. Wayne Norton, C/O James Bonner, C/O M. Martinez, Sgt. Christopher Foschini, Sgt. John S. Stinsman, C/O Takia Johnson, C/O Michcal Jacob, C/O Thomas Crosmick, C/O Chris Kelly, C/O James Finley, Sgt. Kevin Crossan, Sgt. Albert Daniels, C/O Daniel Purdy, C/O Lance McArthy, C/O Janet Giordano, C/O Michael Doyle, Warden [of Camden County Correctional Facility], Director David S. Owens, Sr., Warden Karden Taylor [and] C/O Lawrence Taylor" (*id.*) (the foregoing thirty-five individual defendants hereinafter collectively referred to as "CCCF Personnel").

## II. <u>STANDARD OF REVIEW</u>

2. 28 U.S.C. § 1915(e)(2) requires courts to review complaints prior to service in cases in which a plaintiff is

proceeding *in forma pauperis*. Courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis*.

3.    For the reasons set forth below, the Court will: (1) dismiss the Complaint with prejudice as to claims made against CCCF; and (2) dismiss the Complaint without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii).

## III. <u>DISCUSSION</u>

### A. <u>Claims Against CCCF: Dismissed With Prejudice</u>

4.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983[1] for alleged violations of Plaintiff's constitutional rights. In order to set forth a *prima facie* case under § 1983, a plaintiff must show: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of*

---

[1] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

*Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v.*
*Toledo,* 446 U.S. 635, 640 (1980)).

5.    Generally, for purposes of actions under § 1983,
"[t]he term 'persons' includes local and state officers acting
under color of state law." *Carver v. Foerster*, 102 F.3d 96, 99
(3d Cir. 1996) (citing *Hafer v. Melo,* 502 U.S. 21 (1991)).[2] To
say that a person was "acting under color of state law" means
that the defendant in a § 1983 action "exercised power [that the
defendant] possessed by virtue of state law and made possible
only because the wrongdoer [was] clothed with the authority of
state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation
omitted). Generally, then, "a public employee acts under color
of state law while acting in his official capacity or while
exercising his responsibilities pursuant to state law." *Id.*
at 50.

6.    Because the Complaint has not sufficiently alleged
that a "person" deprived Plaintiff of a federal right, the
Complaint does not meet the standards necessary to set forth a
*prima facie* case under § 1983. In the Complaint, Plaintiff seeks
monetary damages from CCCF for allegedly unconstitutional

---

[2] "Person" is not strictly limited to individuals who are state
and local government employees, however. For example,
municipalities and other local government units, such as
counties, also are considered "persons" for purposes of § 1983.
*See Monell*, 436 U.S. at 690-91.

conditions of confinement. The CCCF, however, is not a "person" within the meaning of § 1983; therefore, the claims against it must be dismissed with prejudice. *See Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983.") (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Given that the claims against the CCCF must be dismissed with prejudice, the claims may not proceed and Plaintiff may not name the CCCF as a defendant.

7.     Plaintiff may be able to amend the Complaint to name a person or persons who were personally involved in the alleged unconstitutional conditions of confinement, however. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 60 days after the date this Opinion and Order are entered on the docket.

**B. <u>Overcrowded Conditions Of Confinement Claim: Dismissed Without Prejudice</u>**

8.     Plaintiff alleges that "during the several times [I was] incarcerated, I was housed in 2-man cell with 3-4 inmates [and] made to sleep on floor by toilet" (hereinafter referred to as Plaintiff's "Overcrowding Claim"). Complaint § III(C).

9. As detailed below, the Court will dismiss the Overcrowding Claim without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(b)(ii). The present Complaint does not allege sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915. The Court will accept as true for screening purposes only the statements in Plaintiff's Complaint, but there is not enough factual support for the Court to infer that an unconstitutional overcrowding violation has occurred.

10. To survive *sua sponte* screening for failure to state a claim[3], the Complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Samuels v. Health Dep't*, No. 16-1289, 2017 WL 26884, slip op. at *2 (D.N.J. Jan. 3, 2017) (citing *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308
n.3 (3d Cir. 2014). "[A] pleading that offers 'labels or
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.
544, 555 (2007)). Moreover, while *pro se* pleadings are liberally
construed, "*pro se* litigants still must allege sufficient facts
in their complaints to support a claim." *Mala v. Crown Bay
Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation
omitted) (emphasis added).

11.   A complaint must plead sufficient facts to support a
reasonable inference that a constitutional violation has
occurred in order to survive this Court's review under § 1915.

12.   However, with respect to the alleged facts giving rise
to Plaintiff's claims, the present Complaint states: "During the
several times incarcerated . . . from 2014 – 2016 . . . I was
housed in 2-man cell with 3-4 inmates, made to sleep on floor by
toilet with constant infestation of mice, as well as being
served spoiled food . . . I was placed on floor, including a[n]
entire 364 day sentence[.] [A]lso later 2015 as well as 2016 [I]
was housed on floor with 3 other inmates in unhealthy living
conditions." Complaint § III(C). The Complaint contends that
Plaintiff "was housed in overcrowded cell with 3 to 4 inmates
and slept on floor" on these dates: 03/18/2014 – 04/08/2014;

4/22/2014 – 06/12/2014; 07/11/2014 – 06/30/2015; 09/01/2015 –

09/15/2015; 10/04/2015 – 12/11/2015; 07/18/2016 – 07/21/2016;

07/22/2016 – 09/21/2016; and 10/15/2016 – 10/26/2016

(collectively referred to hereinafter as "Dates of

Confinement"). Complaint, Docket Entry 1, Attachment 2 at 4 – 5.[4]

13. The Complaint alleges that Plaintiff suffered "severe

and chronic neck and back pain due to sleeping on floor of cell

during long periods of incarceration" as a result of these

events. *Id*. § IV.

14. Plaintiff seeks "$500,000.00 – 1 million dollars" in

relief. *Id*. § V.

15. Even construing the Complaint as seeking to bring a

civil rights complaint pursuant to 42 U.S.C. § 1983 for alleged

prison overcrowding, any such purported claims must be dismissed

because the Complaint does not set forth sufficient factual

---

[4] Plaintiff appended a Booking History report as Attachment 2 to
his Complaint, listing thirteen incarcerations at CCCF. Docket
Entry 1, Attachment 2 at 4 – 5. Plaintiff noted on Attachment 2:
"All times highlighted I was housed in overcrowded cell with 3
to 4 inmates and slept on floor." *Id*. at 4. Plaintiff
highlighted the following eight booking numbers on the original
form of Attachment 2 that he filed with this Court: 4292430,
4290968, 4325672, 4323012, 4322876, 4313094, 4311978, and
4295935. This Court construes all claims asserted in the
Complaint to refer only to the incarceration dates encompassed
within these eight booking numbers. The phrase "Dates of
Confinement" as defined and used in this Opinion encompasses
only the dates associated with these highlighted booking numbers
on Attachment 2 to the Complaint.

support for the Court to infer that a constitutional violation of overcrowding has occurred.

16. The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348–50 (1981) (holding double-celling by itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 542 (1979))). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, shocks the conscience and thus violates due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) ("*Hubbard II*") (noting due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them") (citing *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983) (quoting *Bell*, 441 U.S. at 542)). Some relevant factors are the length of the confinement(s), whether plaintiff was a pretrial detainee or convicted prisoner, any specific individuals who were involved in creating or failing to

remedy the conditions of confinement, any other relevant facts regarding the conditions of confinement, etc.

17.  The Complaint contends that the BOF and BOF Members are liable under the Overcrowding Claim (Complaint § III(C) ("Refer to attachment #1 (pages 1 to 3)")), but Plaintiff has not pled sufficient facts to impose overcrowded conditions of confinement liability on the BOF and BOF Members, as these defendants are not separate legal entities from Camden County and are therefore not independently subject to suit. *See Bermudez v. Essex Cnty. D.O.C.*, No. 12-6035, 2013 WL 1405263, at *5 (D.N.J. Apr. 4, 2013) (citing cases). Plaintiff has not pled sufficient facts to impose liability on Camden County. "There is no *respondeat superior* theory of municipal liability. Rather, a municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Monell v. N.Y.C. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978)). *See also Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) ("The city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer"). Plaintiff must plead facts showing that the relevant Camden County policy-makers are "responsible for either the affirmative proclamation of a policy or acquiescence in a

well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850

(3d Cir. 1990).[5] In other words, Plaintiff must set forth facts

supporting an inference that Camden County itself was the

"moving force" behind the alleged constitutional violation of

overcrowding. *Monell*, 436 U.S. at 689. Given that Plaintiff has

not done so, the Overcrowding Claim must be dismissed without

prejudice as to the BOF and the BOF Members.

18.  The Complaint also alleges that CCCF Personnel are

liable under the Overcrowding Claim. Complaint § III(C) ("Camden

Co. Correctional Officers (See attached)[.] It is common

procedure to place more than 2 inmates in a cell d[ue] to

overcrowding"). However, the Overcrowding Claim must be

dismissed without prejudice as to CCCF Personnel because the

Complaint does "[not] allege[] any personal involvement by

[these defendants] in any constitutional violation – a fatal

flaw, since 'liability in a § 1983 suit cannot be predicated

solely on the operation of *respondeat superior*.'" *Baker v.

Flagg*, 439 F. App'x 82, 84 (3d Cir. 2011) (citing *Rode v.*

---

[5] "Policy is made when a decisionmaker possess[ing] final
authority to establish municipal policy with respect to the
action issues an official proclamation, policy, or edict.
Government custom can be demonstrated by showing that a given
course of conduct, although not specifically endorsed or
authorized by law, is so well-settled and permanent as virtually
to constitute law." *Kirkland v. DiLeo*, 581 F. App'x 111, 118 (3d
Cir. 2014) (internal quotation marks and citations omitted)
(alteration in original).

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

"[Plaintiff's] complaint contains no allegations regarding [these individual defendants]. 'Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' Thus, [plaintiff] failed to state a claim against [the individual defendants]." *Bob v. Kuo*, 387 F. App'x 134, 136 (3d Cir. 2010) (citing *Ashcroft*, 556 U.S. at 676). Given that the Complaint does not, in the first instance, sufficiently allege a violation of overcrowding, Plaintiff has not asserted a colorable constitutional claim to which any CCCF Personnel's individual liability could attach. Accordingly, Plaintiff's Overcrowding Claim against the CCCF Personnel defendants must be dismissed without prejudice.

19.  Plaintiff may be able to amend the Complaint to particularly identify adverse conditions that were caused by specific state actors, that caused Plaintiff to endure genuine privations and hardship over an extended period of time, and that were excessive in relation to their purposes. To that end, the Court shall grant Plaintiff leave to amend the Complaint

within 60 days after the date this Opinion and Order are entered on the docket.[6]

20.  Plaintiff is further advised that any amended complaint must plead specific facts regarding the overcrowded conditions of confinement. In the event Plaintiff files an amended complaint, Plaintiff must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.

21.  Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id*. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court.

---

[6] The amended complaint shall be subject to screening prior to service.

## C. **Failure To Protect Claim Against BOF, BOF Members, and CCCF Personnel: Dismissed Without Prejudice**

22.  Plaintiff alleges that he sustained "physical injuries due to assaults by violent inmate who attacked me when correctional officer[s] left cell block for long periods of time to smoke cigarettes or were asleep at posts" (hereinafter referred to as "Failure to Protect Claim"). Complaint § IV.

23.  Given that Plaintiff is a *pro se* litigant and the Court is required to construe the Complaint liberally, the Court will proceed to review the Failure to Protect Claim as against defendants BOF, BOF Members, and CCCF Personnel.

24.  First, as to BOF, Plaintiff fails to state a claim pursuant to § 1983.

25.  As explained above, a municipality cannot be held liable in a § 1983 action on a theory of *respondeat superior*. *Monell*, 436 U.S. at 694. Instead, liability may be imposed only where it can be shown that the municipality had a policy, regulation, custom, or practice that led to the alleged constitutional violation. *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). Plaintiff's Complaint describes only his personal experiences, which are insufficient to state a claim against the BOF. Specifically, Plaintiff fails to allege what official policy or custom of the BOF caused a constitutional deprivation. *Hildebrand v. Allegheny Cnty.*, 757

F.3d 99, 110-11 (3d Cir. 2014) (complaint must plead facts to support *Monell* liability), *cert. denied*, 135 S.Ct. 1398 (2015); *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (to satisfy pleading standard for a *Monell* claim, a complaint "must identify a custom or policy, and specify what exactly that custom or policy was"). As such, any claims against the BOF and the BOF Members regarding the physical assaults that Plaintiff supposedly endured will be dismissed without prejudice.

26. Second, as to CCCF Personnel, Plaintiff has not offered any of the requisite facts from which this Court could reasonably infer a constitutional violation.

27. In order to state a claim for failure to protect (whether under the Fourteenth Amendment that applies to pre-trial detainees (such as Plaintiff here) and convicted but-not-yet sentenced inmates, or the Eighth Amendment that applies to sentenced prisoners), a plaintiff must plead facts showing that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the [defendant] was deliberately indifferent to that substantial risk to his health and safety, and (3) the [defendant's] deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 366-67 (3d Cir. 2012). "'Deliberate indifference' in this context is a subjective standard: the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* at

367 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). "It is not sufficient that the official should have known of the risk." *Bistrian*, 696 F.3d at 367 (citing *Beers-Capitol*, 256 F.3d at 133 (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)).

28. Plaintiff's conclusory and unsupported use of the term "violent inmate" (Complaint § IV) is insufficient to demonstrate that "he was incarcerated under conditions posing a substantial risk of serious harm." *Bistrian*, 696 F.3d at 367.

29. Moreover, although Plaintiff alleges that the assault occurred because un-named correctional officers were preoccupied with cigarette and sleep breaks (Complaint § IV), such allegations of negligence are insufficient to establish deliberate indifference. *Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) ("It is well established that merely negligent misconduct will not give rise to a claim under § 1983; the defendant must act with a higher degree of intent") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998)) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process")). "[N]egligent conduct is never egregious enough to shock the conscience." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004). In other words, mere negligence or inattention by a corrections officer

in failing to protect a pretrial detainee from violence at the
hands of another inmate is not enough to rise to the level of a
constitutional violation under the Fourteenth Amendment.
Defendants "must actually have been aware of the existence of
the excessive risk; it is not sufficient that [Defendants]
should have been aware." *Beers-Capitol*, 256 F.3d at 133 (citing
*Farmer*, 511 U.S. at 837-38). Plaintiff here has offered no facts
whatsoever to even suggest that the unnamed correctional
officers were aware of any risk whatsoever to Plaintiff's safety
in his CCCF cell (let alone that such risk was substantial) or
that the officers were deliberately indifferent to such.

30.  Finally, the mere assertion that Plaintiff was
"assault[ed] by violent inmate who attacked me when correctional
officer[s] left cell blocks for long periods of time to smoke
cigarettes or were asleep at posts" (Complaint § IV) does not
lead to any inference of causation, such as facts demonstrating,
for example, that: particular correctional officers actively
ignored orders to keep Plaintiff apart from the alleged inmate-
attacker, the alleged inmate-attacker had a history of violent
conduct, or such officers had witnessed prior violent
interactions involving the inmate-attacker. (The foregoing
examples are merely illustrative but not exhaustive or
exclusive.) In short, Plaintiff does not connect any particular
correctional officers in any way to the facts of the alleged

incidents. In short, Plaintiff's Complaint fails to state a claim upon which relief can be granted as to CCCF Personnel.

31.   Accordingly, the Failure to Protect Claim will be dismissed without prejudice, with leave to amend the Complaint, within 60 days after the date this Opinion and Order are entered on the docket, to meet the pleading deficiencies noted above. If he wishes to pursue the Failure to Protect Claim, Plaintiff bears the burden of supplying the facts of the claim, as discussed above, including: (a) sufficient factual detail for the Court to infer that he was incarcerated under conditions posing a substantial risk of serious harm, that a particular defendant was deliberately indifferent to that substantial risk to Plaintiff's safety, and such defendant's deliberate indifference caused Plaintiff harm; (b) names of the specific party(ies) whom Plaintiff claims are allegedly liable under the claim; and (c) the date(s) on which such event(s) occurred. *Mala*, 704 F.3d at 245; *Pliler v. Ford*, 542 U.S. 225, 231 (2004). The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court in this Opinion and the accompanying Order.

   **D.** **Condition Of Confinement Claim – Inadequate Medical Care: Dismissed Without Prejudice**

32.   Plaintiff contends that he was "given unprescribed insulin as I am a diabetic and was overdosed insulin daily

against my family doctor[']s orders . . . [and] spoiled . . .
fruit given to me by nursing staff to juggle my blood sugar
count after giving me the wrong insulin" (referred to
hereinafter as "Medical Care Claim"). Complaint § III(C), § V.

33. Given that such allegations are insufficient to plead
unconstitutional conditions of confinement as to the adequacy of
medical care, the Court will dismiss the Medical Care Claim
without prejudice.

34. The Due Process Clause of the Fourteenth Amendment
applies to pretrial detainees' claims of inadequate medical
care. *Bocchino v. City of Atlantic City*, 179 F. Supp.3d 387, 403
(D.N.J. 2016). "[T]he Fourteenth Amendment in this context
incorporates the protections of the Eighth Amendment" (*Holder v.
Merline*, No. 05-1024, 2005 WL 1522130, at *3 (D.N.J. June 27,
2005) (citing *Simmons v. City of Philadelphia*, 947 F.2d 1042,
1067 (3d Cir. 1991), *cert. denied,* 503 U.S. 985 (1992)), and
most cases have stated that, at a minimum, the Eighth
Amendment's "deliberate indifference" standard will suffice. In
other words, substantive due process rights are violated only
when the behavior of the government official is so egregious and
outrageous that it "shocks the conscience." *Luzerne*, 372 F.3d at
579 (citing *Lewis*, 523 U.S. at 846-47).

35. Applying this principle in the context of a claim for
violation of the right to adequate medical care, a pretrial

detainee must allege the following two elements to set forth a cognizable cause of action: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

36.   To satisfy the first prong of the *Estelle* inquiry, an inmate must demonstrate that his medical needs are serious. The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment"; (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this first element under *Estelle,* courts consider factors such as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp.2d 284, 289 (D.N.J. 1998).

37.   The second element of the *Estelle* test is subjective and "requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need." *Holder*,

2005 WL 1522130, at *4 (citing *Natale*, 318 F.3d at 582) (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). Conduct that constitutes negligence does not rise to the level of deliberate indifference; rather, deliberate indifference is a "reckless disregard of a known risk of harm." *Holder*, 2005 WL 1522130, at *4 (citing *Farmer*, 511 U.S. at 836). "Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference." *Holder*, 2005 WL 1522130, at *4 (citing *Andrews v. Camden Cnty.*, 95 F. Supp.2d 217, 228 (D.N.J. 2000)). Courts have found deliberate indifference "in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence[,] *Nicini v. Morra*, 212 F.3d 798, 815 n. 14 (3d Cir. 2000) [and] in situations where 'necessary medical treatment is delayed for non-medical reasons.' *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)[,] [*cert. denied*, 486 U.S. 1006 (1988)]." *Natale*, 318 F.3d at 582.

38. Here, Plaintiff's non-specific assertions such as "I was overdosed insulin daily" (Complaint § III(C)) are insufficient to meet the pleading standard in the absence of additional facts. Plaintiff offers no facts to satisfy either of the two prongs required for his Medical Care Claim: (a) the

"serious condition" prong; and (b) the "deliberate indifference" prong. *Estelle*, 429 U.S. at 106; *Natale*, 318 F.3d at 582.

39.   First, the Complaint is silent with respect to facts relevant to establishing *Estelle*'s "serious condition" element, such as, for example: the nature of Plaintiff's diabetic condition; the type(s) of medication purportedly administered to him; the length, frequency and dosage amount of the alleged insulin administration; and the severity of the reactions, if any, that he suffered from the claimed overdosing of medication. (The foregoing examples are merely illustrative but not exhaustive or exclusive.) In short, Plaintiff has not alleged that he has ever actually been diagnosed with a particular form of diabetes, that his purported diabetic condition is so obvious that a lay person would recognize the necessity for administering a particular level of medication, or that any particular defendant's administration of a certain dosage of medication resulted in the unnecessary and wanton infliction of pain or a permanent loss to Plaintiff. The severity of Plaintiff's alleged diabetic condition, the potential for harm to Plaintiff from such condition if insulin was not administered in a particular dose, and whether any such harm actually resulted from the alleged insulin overdose are also unclear from Plaintiff's allegations. Accordingly, Plaintiff has not satisfied *Estelle*'s first element for his Medical Care Claim.

40.    Second, Plaintiff has not alleged any facts suggesting deliberate indifference by any defendant[s] to satisfy *Estelle*'s subjective prong. For example, Plaintiff sets forth no allegations as to whether any defendant[s] deliberately administered an improperly-elevated dose of insulin without justification or with the intent to punish Plaintiff. The Complaint is silent as well with respect to whether Plaintiff informed any defendant[s] of his need for a certain dosage and timing of insulin. *See*, *e.g.*, *Mattern v. City of Sea Isle*, 131 F. Supp.3d 305, 316 (D.N.J. 2015) (citing *Nicini*, 212 F.3d at 815 n.14) ("[T]he Third Circuit has found deliberate indifference in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence"). Furthermore, the Complaint does not set forth any contentions that are necessary to describe how individual defendants were personally involved and deliberately indifferent to Plaintiff's purportedly serious medical needs.

41.    Furthermore, the Court observes that mere disagreement with the kind of medical care administered does not in itself state a viable claim for relief. *Innis v. Wilson*, 334 F. App'x 454, 456-57 (3d Cir. 2009). *See also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("mere disagreement as to the proper medical treatment" is insufficient to state a constitutional

violation). A prisoner is not entitled to the medical treatment of his choice. *See Reed v. Cameron*, 380 F. App'x 160, 162 (3d Cir. 2010) (dissatisfaction with prison medical care is insufficient to show deliberate indifference) (citing *Monmouth Cnty.*, 834 F.2d at 346). Thus, to the extent that Plaintiff's criticism of medical care received at CCCF arises merely from his disagreement with that treatment, his Medical Care Claim does not pass constitutional muster.

43.    Therefore, the Court finds that Plaintiff's Medical Care Claim has failed to state a cause of action under the Fourteenth Amendment. Such claim will be dismissed without prejudice and with leave to amend the Complaint, within 60 days after the date this Opinion and Order are entered on the docket, to meet the pleading deficiencies noted above, if Plaintiff elects to pursue this claim with respect to deliberate indifference to a serious diabetic condition. The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court in this Opinion and accompanying Order.

## E. Conditions Of Confinement Claims – Jail Conditions: Dismissed Without Prejudice

43.    Plaintiff complains of several alleged jail conditions during his Dates of Confinement: (a) "spoiled [and] substandard food", (b) "constant" mice infestation, (c) "no working toilet"

for "2 – 3 weeks in July 2016," (d) "no running water" for "2 – 3 weeks in July 2016," and (e) "no cold air" for "2 – 3 weeks in July 2016" (the foregoing five conditions of confinement collectively referred to hereinafter as "Jail Conditions"). Complaint § III(C), § V. For the reasons set forth below, all such claims shall be dismissed without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

44. A failure of prison officials to provide minimally civil conditions of confinement to pre-trial detainees violates their right not to be punished without due process of law. *Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997); *Monmouth Cnty.*, 834 F.2d at 345-46, n. 31; *Estelle*, 429 U.S. at 104; *Farmer*, 511 U.S. at 835.[77] Pursuant to the Fourteenth Amendment's Due Process Clause, prison officials must satisfy "basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). *See also Mora v. Camden Cnty.*, No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010) (applying *Helling* to pretrial detainee). However, "a detainee seeking to show unconstitutional conditions of confinement must clear a 'high

---

[77] "[T]he Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," *Reynolds*, 128 F.3d at 173, and so the Eighth Amendment sets the floor for the standard applicable to pre-trial detainees' claims. *Bell*, 441 U.S. at 544.

bar' by demonstrating 'extreme deprivations.'" *Cartegena v. Camden Cnty. Corr. Facility*, No. 12-4409, 2012 WL 5199217, at *3 (D.N.J. Oct. 19, 2012) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004)).

45.  When a pretrial detainee complains about the conditions of his confinement, courts are to consider, in accordance with the Fourteenth Amendment, whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) ("*Hubbard I*"). In making such a determination, courts consider: (a) whether any legitimate purposes are served by the conditions at issue, and (b) whether those conditions are rationally related to those purposes. *Hubbard II*, 538 F.3d at 232 (quoting *DiBuono*, 713 F.2d at 992). Courts must inquire as to whether the conditions "'cause [detainees] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Hubbard I*, 399 F.3d at 159-60 (citations omitted).

46.  The objective component of unconstitutional punishment analysis examines whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing

27

*Bell*, 441 U.S. at 538-39, n.20), *cert. denied*, *Phelps v. Stevenson*, 552 U.S. 1180 (2008).

47. Here, allegations about the Jail Conditions do not surmount this constitutional analysis.

### i. **Food Claim: Dismissed Without Prejudice**

48. Plaintiff alleges that he was "served spoiled [and] substandard food . . . [such as] spoiled baloney sandwiches & fruit" (referred to hereinafter as "Food Claim") during the Dates of Confinement. Complaint § III(C), § V.

49. The general allegations of Plaintiff's Food Claim are insufficient to satisfy either the objective or subjective components to a Fourteenth Amendment Due Process cause of action.

50. The constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable [as to claims of inadequate food] unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp.2d 702, 719-20 (D.N.J. 2013) (citing *Stevenson*, 495 F.3d at 68 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("Unconstitutional punishment typically includes both objective and subjective components")).

51. Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." *Duran*, 923 F. Supp.2d at 720 (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). "Under the Eighth Amendment, which provides a floor for the rights of pretrial detainees, *see Natale*, 318 F.3d at 581, inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." *Duran*, 923 F. Supp.2d at 720 (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *Mora*, 2010 WL 2560680, at *8).

52. Plaintiff has not satisfied this objective requirement. "[I]solated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional." *Duran*, 923 F. Supp.2d at 720 ("Being served cold meals . . . is not 'punishment' under *Bell.* So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . .") (citing *Nickles v. Taylor*, Nos. 09-313, 09-557, 09-952, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) ("A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities"). Here, the Complaint does not contend that CCCF frequently served Plaintiff

29

"spoiled" food, that a significant portion of Plaintiff's diet consisted of such food, or that the supposed "substandard" fare caused more than temporary discomfort. Complaint § III(C), § V. Without any facts that are necessary to demonstrate substantial nutritional deprivation, such as how frequently the alleged "spoiled" food was served, a description of the manner in which the food offered to Plaintiff was in fact "spoiled" and "substandard," what other meal options were offered, and for how long during the Dates of Confinement Plaintiff was arguably compelled to eat "substandard" food, this Court cannot find that Plaintiff has stated a cognizable constitutional claim; that is, without additional facts such as these, Plaintiff has not met the objective prong of the constitutional analysis. Viewing the alleged conditions of "being served spoiled [and] substandard food" and "spoiled baloney sandwiches & fruit" (Complaint § III(C), § V) together, they fall short of establishing a constitutionally substantial deprivation. Occasional incidents during incarceration involving spoiled food are insufficient to show that Plaintiff has been denied life's necessities. Without facts such as the degree of continuity of the alleged spoiled food occurrences, or the injury (if any) Plaintiff sustained from such food (beyond more than temporary discomfort or dislike), the Food Claim constitutionally falls short.

53.  Additionally, Plaintiff has not alleged that CCF officials possessed the requisite culpability to satisfy the subjective component of the Fourteenth Amendment analysis. As noted above, Plaintiff must establish that CCCF officials acted with "deliberate indifference" to his needs, meaning that they were subjectively aware of the alleged conditions and failed to reasonably respond to them. *Duran*, 923 F. Supp.2d at 721 (citing *Farmer*, 511 U.S. at 829 and *Mora*, 2010 WL 2560680, at *9). The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *Duran*, 923 F. Supp.2d at 721 (citing *Farmer*, 511 U.S. at 839-40). Plaintiff has not offered any facts from which this Court can reasonably infer deliberate indifference by anyone at CCCF with respect to food quality.

54.  Given that Plaintiff has failed to demonstrate facts suggesting (a) that the food served to him at CCCF presented an objectively serious risk of nutritional deficiency (regardless of Plaintiff's dislike of the food he was provided) and (b) that prison officials responsible for such knew of that risk and were deliberately indifferent to it, the Complaint fails to state a claim for which relief may be granted. Accordingly, Plaintiff's Food Claim shall be dismissed without prejudice, with leave to file an amended complaint addressing its deficiencies, within 60 days after the date this Opinion and Order are entered on the

docket, if Plaintiff elects to pursue this claim of deliberate indifference to a serious nutritional deprivation.

### ii. Rodent Infestation Claim: Dismissed Without Prejudice

55.  Plaintiff alleges that there were "substandard living conditions wrought with infesta[t]ion" and "constant infestation of mice" (hereinafter referred to as "Rodent Infestation Claim") during the Dates of Confinement. Complaint § III(C), § V.

56.  These general allegations of Plaintiff's Rodent Infestation Claim are insufficient to satisfy either the objective or subjective components of Fourteenth Amendment Due Process.

57.  As to the objective prong of the test, Plaintiff does not offer any facts that are necessary to show that he was subjected to genuine privation and hardship over an extended period of time. While unsanitary living conditions may give rise to a conditions of confinement claim, the Complaint here expresses nothing but Plaintiff's displeasure with less than perfect jail conditions ("constant infestation of mice" and "conditions wrought with infestation" (Complaint § III(C), § V)). Plaintiff does not offer any facts that are necessary to demonstrate that the supposed rodent conditions potentially jeopardized his health or in fact caused any injuries. The

Complaint fails to demonstrate that his housing conditions were imposed as "punishment."

58. Courts have, in fact, "routinely recognized that '[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." *See*, *e.g.*, *Holloway v. Cappelli*, No. 13-3378, 2014 WL 2861210, at \*5 (D.N.J. June 24, 2014) (citing *Chavis v. Fairman*, 51 F.3d 275, \*4 (7th Cir. 1995) (internal citations omitted)).

59. As to the subjective prong, Plaintiff has failed to allege facts showing, or from which this Court could infer, that any defendants were aware of, and disregarded, a substantial risk to Plaintiff's health and safety from the purported rodent situation. The Complaint is void of facts showing, by way of example, that any defendants either ignored the alleged mice at CCCF or denied Plaintiff medical treatment for any health injuries arising from the supposed "constant infestation of mice." Complaint § III(C). As such, Plaintiff's displeasure with the purported rodent situation is not actionable; there are no facts indicating any defendants acted with a culpable state of mind.

60.    Accordingly, Plaintiff's Rodent Infestation Claim
will be dismissed without prejudice, with leave to amend the
complaint, within 60 days after the date this Opinion and Order
are entered on the docket, to meet its deficiencies as noted
herein, if Plaintiff elects to pursue this claim of deliberate
indifference to a substantial risk to Plaintiff's health and
safety from the purported rodent situation.

### iii. Toilet Claim: Dismissed Without Prejudice

61.    Plaintiff complains of "unhealthy living conditions in
July 2016 [when I] spent 2 - 3 weeks with no working toilet"
(hereinafter referred to as "Toilet Claim"). Complaint § III(C).

62.    Denial of the "minimal civilized measure of life's
necessities," *Rhodes*, 452 U.S. at 347, which would include basic
sanitary conditions, can be sufficient to state an actionable
constitutional deprivation. However, the non-specific nature of
Plaintiff's allegations as to his Toilet Claim does not provide
a reasonably sufficient basis for this Court to infer that
sanitary conditions are, in fact, the type of violation from
which his Toilet Claim arises.

63.    Rule 8 of the Federal Rules of Civil Procedure ("Fed.
R. Civ. P.") requires pleadings to contain "a short and plain
statement of the grounds for the court's jurisdiction . . .   a
short and plain statement of the claim showing that the pleader
is entitled to relief; and demand for the relief sought . . . ."

Fed. R. Civ. P. 8(a)(1)-(3). While *pro se* complaints are
construed liberally and are held to less stringent standards
than formal pleadings drafted by lawyers (*Erickson v. Pardus*,
551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520
(1972)), *pro se* litigants nevertheless must still allege facts,
taken as true, to suggest the required elements of the claims
asserted. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35
(3d Cir. 2008); *McNeil v. United States*, 508 U.S. 106, 113
(1993)("[W]e have never suggested that procedural rules in
ordinary civil litigation should be interpreted so as to excuse
mistakes by those who proceed without counsel").

64.  Here, the Court cannot discern from Plaintiff's non-
specific reference to "no working toilet" (Complaint § III(C))
the particular cause(s) of action Plaintiff intends to pursue
against any particular person as to this alleged condition of
confinement. For example, the Complaint is silent regarding:
whether the toilet at issue was the unit inside Plaintiff's cell
at CCCF or was part of the public facility for the CCCF prison
population generally; whether alternate restroom facilities were
made available to Plaintiff to account for the non-operational
unit of which he complains; and the reason for the non-
functioning nature of the toilet referred to in the Complaint
(*e.g.*, plumbing maintenance schedule, plumbing malfunction,
etc.) (*see Passmore v. Ianello*, 528 F. App'x 144, 149 (3d Cir.

2013) ("[C]ourts will generally not interfere with prison administrative matters and will afford significant deference to judgments of prison officials regarding prison regulation and administration. *See, e.g., Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ('Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators')").

65.  Furthermore, construing the Complaint – without deciding – to suggest that Plaintiff's Toilet Claim relates in some manner to sanitary conditions, such toilet condition "[may] no doubt [have been] unpleasant, [but] it does not pose an obvious health risk and consequently does not deprive [Plaintiff] the minimal civilized measures of life's necessities." *Carson v. Main*, No. 14-cv-7454, 2015 WL 18500193, at *4 (D.N.J. Apr. 15, 2015) (dismissing plaintiff's Fourteenth Amendment due process claim where neighboring cells shared plumbing pipes and required residents to flush their own toilet to dispose of the neighboring cell's waste). *Accord Junne v. Atlantic City Med. Ctr.*, No. 07-5262, 2008 WL 343557, at *10 (D.N.J. Feb. 4, 2008) (dismissing plaintiff's conditions of confinement claim where plaintiff alleged that the jail's lack of a private bathroom and his "need to use the toilet in the presence of a total stranger caused substantial embarrassment,"

because "plaintiff's embarrassment ensuing from having another person in the cell while plaintiff uses the toilet cannot qualify as a violation of plaintiff's constitutional rights"). "There is, of course, a *de minimus* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. 539 n. 21. Plaintiff has failed to present facts demonstrating that the toilet condition here passed this threshold. He does not contend that the non-operational toilet was intended as punishment, or that he suffered adversely from it. The Complaint has not alleged that Plaintiff developed physical injuries as a result of the condition.

66.    Viewing the facts and the totality of the circumstances in the light most favorable to Plaintiff, the Complaint fails to set forth sufficient factual matter to show that the Toilet Claim is facially plausible. *Fowler*, 578 F.3d at 210. Since Plaintiff's claim asserting "no working toilet" (Complaint § III(C)) does not offer facts that are necessary to show that he was subjected to a genuine privation for an extended period, such allegations fail to state a claim and will be dismissed without prejudice, with leave to amend.

### iv. Cold Air Claim: Dismissed Without Prejudice

67.    Plaintiff complains of "unhealthy living conditions in July 2016 [when I] spent 2 - 3 weeks with no cold air"

(hereinafter referred to as "Cold Air Claim"). Complaint §
III(C).

68.   The Eighth Amendment (which, as noted above, is a
floor for Due Process rights guaranteed to detainees under the
Fourteenth Amendment) affords a right to adequate ventilation
and to be free from extreme hot and cold temperatures. *Wilson v.
Cook Cnty. Bd. of Comm'rs*, 878 F. Supp. 1163, 1169 (N.D. Ill.
1995) (noting that "if inadequate ventilation can amount to
cruel and unusual punishment under the Eighth Amendment, it
would also amount to prohibited punishment under the Fourteenth
Amendment," and citing *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th
Cir. 1987) (internal citations omitted)).

69.   However, the Constitution does not guarantee the right
to be free from all discomfort while incarcerated. *Rhodes*, 452
U.S. at 349.

70.   Under the "objective component" to a Fourteenth
Amendment Due Process claim, a detainee must prove that the
condition of which he complains is sufficiently serious to
violate the Constitution. *Hudson v. McMillian*, 503 U.S. 1, 8
(1992). Severe discomfort is insufficient to establish the
objective component of a conditions of confinement claim. The
challenged condition must be "extreme." *Id*. at 9. Given the
inherent subjectivity involved in temperature conditions, courts

have looked to objectively verifiable criteria to determine whether the temperature in a particular case was severe.

71.  Plaintiff here has offered no such facts to demonstrate the temperature severity inside his cell for "2 – 3 weeks in July 2016" (Complaint § III(C)), such as, by way of example: the outside air temperatures and humidity levels experienced in CCCF's geographic location in New Jersey in July 2016; the ambient temperature in Plaintiff's CCCF cell that month; whether Plaintiff experienced sleep difficulties on or about that time period; whether he suffered heat-related health complications from the temperatures in his cell; whether he made grievances to CCCF staff regarding the summer conditions of which he now complains; whether he requested or was provided fans, ice water, or extra shower opportunities on or around that time; whether there were windows in his cell that provided cross-ventilation; whether he required or requested medications to deal with any medical problems that interfered with his body's ability to maintain a normal temperature; whether his cell was exposed to direct sunlight; whether Plaintiff was required to perform prison labor; and whether he had any limited opportunity to gain relief in air-conditioned areas. (The foregoing examples are merely illustrative but not exhaustive or exclusive.) In short, Plaintiff has not offered the facts necessary to demonstrate that the "no cold air" (Complaint §

III(C)) situation crossed the line that separates institutional administration from punishment. While temperatures at CCCF may have been unpleasant, Plaintiff has not offered facts from which it can be inferred that they were constitutionally excessive.

72.    Furthermore, Plaintiff alleges no facts suggesting that any defendants actually knew of and disregarded any excessive risk to Plaintiff's safety from the July 2016 temperature situation in CCCF. As with the objective component, Plaintiff therefore also has not satisfied the subjective prong to Due Process for his Cold Air Claim.

73.    Accordingly, Plaintiff's Cold Air Claim shall be dismissed without prejudice, with leave to amend.

### v. **Water Claim: Dismissed Without Prejudice**

74.    As to his final Jail Conditions Claim, Plaintiff complains of "unhealthy living conditions in July 2016 [when I] spent 2 - 3 weeks with no running water" (hereinafter referred to as "Water Claim"). Complaint III(C).

75.    "[T]here is no doubt that potable water constitutes a basic human need and that water that is suitable for drinking and bathing be supplied to inmates." *Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) (internal citations omitted). However, as set forth above, Fed. R. Civ. P. 8 requires pleadings to contain, *inter alia*, "a short and plain statement of . . . the claim showing that the pleader is

40

entitled to relief." Fed. R. Civ. P. 8(a)(1)-(3). Even with *pro se* status, litigants must still allege facts, taken as true, to suggest the required elements of the claims asserted. *Erickson*, 551 U.S. at 94; *Haines*, 404 U.S. at 520; *McNeil*, 508 U.S. at 113; *Phillips*, 515 F.3d at 234-35.

76. Here, Plaintiff may have found "no running water" (Complaint § III(C)) unsettling, upsetting or uncomfortable, but the Court cannot discern from Plaintiff's non-specific contention the type of allegations Plaintiff intends to pursue against any particular person as to this condition of confinement. For example, the Complaint is silent as to: the purpose for which Plaintiff intended to use the allegedly inoperable "running water" (*e.g.*, bathing; drinking; body temperature cooling purposes; etc.); whether jail officials rendered running water unavailable for punitive purposes; whether alternate sources of water or other liquids were made available to Plaintiff (*e.g.*, bottled beverages for hydration; public area restrooms; sinks for personal hygiene cleansing; etc.) and, if so, how frequently; whether Plaintiff was provided with fluids or skin cleansers for hand and face washing before meals; or whether running water was rendered unavailable by virtue of jail maintenance activities (*see Passmore*, 528 F. App'x at 149 ("[C]ourts will generally not interfere with prison administrative matters"); *Jones*, 433 U.S. at 126 (referring to

"the wide-ranging deference to be accorded the decisions of prison administrators").

77. Its Fed. R. Civ. P. 8 pleading deficiencies aside, the temporary "2 – 3 week" (Complaint § III(C)) inconvenience of "no running water" that Plaintiff may have found unsettling, upsetting or uncomfortable does not satisfy either of the two prongs of a Due Process claim for denial of the minimal civilized measure of life's necessities: (a) the "sufficiently serious" objective prong, under which the conditions cited by a plaintiff must be objectively serious and must result in the denial of the minimal civilized measure of life's necessities when viewed within the context of contemporary standards of decency (*Farmer*, 511 U.S. at 832); and (b) the "sufficiently culpable state of mind" subjective prong, under which a defendant must have demonstrated a deliberate indifference to the well-being of a plaintiff. *Estelle*, 429 U.S. at 106; *Natale*, 318 F.3d at 582; *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 36.

78. First, Plaintiff has not provided facts required to demonstrate that he suffered any objectively verifiable injury for the 2 – 3 week period of which he complains. Even viewing the Complaint in a light most favorable to Plaintiff, within the context of prison life, he has not established that he was denied "the minimal civilized measure of life's necessities."

*Farmer*, 511 U.S. at 834. Thus, Plaintiff has failed to satisfy the objective standard of the Fourteenth Amendment test. For example, even if proved, the mere fact that the water in a jail cell was turned off for a period of time, without more, is not sufficient to rise to the level of a constitutional violation. *See*, *e.g.*, *Stewart v. Wright*, No. 96-1486, 1996 WL 665978, at *1 (7th Cir. Nov. 14, 1996) ("Dry cell conditions such as not being able to flush the toilet or brush teeth are mere inconveniences ... [I]t is well settled that conditions which are temporary and do not result in physical harm are not [constitutionally] actionable").

79. Furthermore, Plaintiff has provided no requisite facts suggesting that any defendants were deliberately indifferent and motivated by ill will with respect to running water. Thus, Plaintiff also has failed to satisfy the subjective standard of the Fourteenth Amendment test. Plaintiff's temporary dissatisfaction cannot provide a basis for a constitutional claim and, therefore, his disappointment with "2 – 3 weeks with no running water" (Complaint § III(C)) does not suggest a deprivation of constitutional magnitude. *See*, *e.g.*, *Diaz v. Cumberland Cnty. Jail*, No. 10-3932, 2010 WL 3825704, at *4 (D.N.J. Sept. 23, 2010) (dismissing claims for lack of running water while incarcerated, and citing *Rivera v. Walker,* 2008 U.S. Dist. LEXIS 88787, at *14 (S.D. Ill. June 9, 2008) (applying

Eighth Amendment analysis to conclude that, since "the lack of
running water was a temporary condition [because] Plaintiff was
placed in [the cell without running water in] August ... and ...
transferred [out of that cell in] October ..., about six weeks
later, [this time line leads the court to conclude that,]
although the situation was not desirable, the lack of running
water in his cell for about six weeks ... did not violate
plaintiff's rights")).

80.  Accordingly, Plaintiff's Water Claim will be dismissed
without prejudice, with leave to amend the complaint, within 60
days after the date this Opinion and Order are entered on the
docket, to meet its deficiencies as noted herein, if Plaintiff
elects to pursue this claim of deliberate indifference to
provision of running water that, under the totality of
circumstances, amounted to a serious deprivation.


81.  In sum, Plaintiff's Food Claim, Rodent Infestation
Claim, Toilet Claim, Cold Air Claim, and Water Claim will be
dismissed without prejudice, with leave to amend the complaint,
within 60 days after the date this Opinion and Order are entered
on the docket, to meet the claims' deficiencies as noted herein,
including: (a) sufficient factual detail for the Court to infer
that Plaintiff was subjected to genuine privations and hardships
over an extended period of time, that a particular defendant was

44

deliberately indifferent to those substantial risks to
Plaintiff's health and safety, and that such defendant's
deliberate indifference caused Plaintiff harm; (b) names of the
specific party(ies) whom Plaintiff claims are allegedly liable
under each particular claim; and (c) the date(s) on which the
relevant events occurred. *Mala*, 704 F.3d at 245; *Pliler*, 542
U.S. at 231. The amended complaint may not adopt or repeat any
claims that have been dismissed with prejudice by the Court in
this Opinion and its accompanying Order.

82. In connection with the leave to amend granted by this
Court as to the Overcrowding Claim, Failure to Protect Claim,
Medical Care Claim, and Jail Conditions Claims, Plaintiff should
note that claims for relief as to conditions at CCCF that
Plaintiff encountered prior to January 10, 2015 are barred by
the statute of limitations. Claims brought under § 1983 are
governed by New Jersey's two-year limitations period for
personal injury. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985);
*Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).
"Under federal law, a cause of action accrues when the plaintiff
knew or should have known of the injury upon which the action is
based." *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480
(3d Cir. 2014). The allegedly unconstitutional conditions of
confinement at CCCF would have been immediately apparent to
Plaintiff; therefore, the statute of limitations on some of

Plaintiff's claims expired two years after release from incarceration. Plaintiff filed his Complaint in this case on January 10, 2017. Therefore, in the event Plaintiff elects to file an amended complaint, it shall be limited to confinements from which Plaintiff was released on or after January 10, 2015.

## IV.  Conclusion

83.  For the reasons stated above, the Complaint is: (a) dismissed with prejudice as to the CCCF and (b) dismissed without prejudice for failure to state a claim.

84.  An appropriate order follows.

**May 31, 2017**                              **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge